25-MJ-7151-JCB

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR CRIMNAL COMPLAINT

I, Dane C. Jobst, having been duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. I, Dane C. Jobst, am a State Trooper employed by the Massachusetts State Police (MSP) since June 27, 2019. My current assignment is with the Narcotics Section within the Division of Homeland Security and Preparedness. I am assigned as a Task Force Officer (TFO) for the U.S. Bureau of Alcohol, Tobacco, Firearms, & Explosives (ATF) in the Worcester Satellite Office (WSO) of the ATF Boston Field Division (BFD). As an ATF TFO, I am sworn as a Deputy U.S. Marshall to conduct federal investigations. My primary duties with ATF include the investigation and prevention of federal offenses involving the unlawful use, manufacturing, possession, and trafficking of firearms.

2. Before my assignment with the ATF WSO, I was attached to the ATF Springfield Field Office (SFO) and the Hampden County District Attorney's Office Strategic Action & Focused Enforcement (SAFE) Task Force. My primary duties with the SAFE Task Force included investigating prolific violent offenders, their leadership, and their associated networks through an intelligence-led, pro-active and coordinated effort with federal, state, and local law enforcement agencies. Prior to my assignment with the MSP Narcotics Section, I was assigned to the Troop B Community Action Team (CAT) and worked at the B3 Springfield State Police Barracks. Prior to my employment with the Massachusetts State Police, I worked as a full time Police Officer for the Worcester Police Department, and as a part time Police Officer for the Deerfield Police Department and the Brockfield Police Department.

3. As part of my training and employment, I have experience conducting surveillance, utilizing confidential informants, and conducting court-authorized electronic surveillance. I have made and/or assisted on numerous firearms arrests, as well as arrests for trafficking, distribution, and

1

possession of narcotics. Furthermore, I have authored and/or assisted in the drafting of various affidavits, to include state wiretaps, and have participated in arrest warrants and the planning and execution of search warrants in firearms and narcotics investigations.

4. I have a master's degree in public administration from Roger Williams University, as well as a Bachelor of Science degree in criminal justice with a minor in philosophy and law from Worcester State University. I successfully completed the Massachusetts State Police Academy in New Braintree, Massachusetts, the Worcester Police Academy in Worcester, Massachusetts, and the Franklin County Reserve/Intermittent Academy in Greenfield, Massachusetts. These trainings covered patrol procedures, motor vehicle law, criminal law, constitutional law, search and seizure law, and violations of the Massachusetts Controlled Substance Act.

5. I submit this affidavit in support of a criminal complaint charging Dennis T. Michaud, Jr. ("MICHAUD"), D.O.B. XX/XX/2002, trafficking of firearms, in violation of 18 U.S.C. § 933(a)(1).

6. This affidavit is submitted for the limited purpose of establishing probable cause to secure a criminal complaint. In submitting this affidavit, I have not included each and every fact known to me and other law enforcement officers concerning this investigation. Instead, it contains only facts sufficient to establish probable cause in support of a criminal complaint and the issuance of an arrest warrant.

## STATEMENT OF PROBABLE CAUSE

7. In February 2025, ATF and other members of law enforcement initiated an investigation into MICHAUD as a suspected source of firearms illegally brought into Massachusetts. MICHAUD lives in Nashua, New Hampshire.

8. A review of MICHAUD's criminal history in New Hampshire revealed that, on June 21, 2023, MICHAUD was convicted in Nashua District Court (New Hampshire) of possession of

marijuana. (New Hampshire Court Docket #: 459-2022-CR-02276.) On February 25, 2024, MICHAUD attempted to purchase a firearm at Granite State Indoor Range & Gunshop in Hudson, New Hampshire. MICHAUD's attempted purchase of the firearm was denied because his 2023 conviction makes him a prohibited person under 18 U.S.C. § 922(g)(3), which prohibits unlawful users of any controlled substance from possessing firearms.[1]

9. MICHAUD does not have a license to engage in the manufacture, importation, and/or sales of firearms and ammunition.

10. As described in further detail below, during February 2025, ATF made four controlled purchases of firearms from MICHAUD in Massachusetts using an ATF Confidential Informant, hereinafter referred to as "the CI."[2]

### February 11, 2025, Controlled Purchase

11. From around February 7 through February 11, 2025, the CI and other undercover law enforcement officers communicated with MICHAUD through Snapchat direct messages, telephone text messages, and phone calls to arrange for the purchase of a semiautomatic rifle. During those

---

[1] Under 18 U.S.C. § 922(g)(3), unlawful users of any controlled substance are also prohibited from shipping and/or transporting any firearm or ammunition in or affecting interstate commerce.

[2] The CI has a criminal history that includes convictions in state court for breaking and entering in 1993, knowingly receiving stolen property (motor vehicles) in the mid-1990s, and possession of both Class B and Class D (marijuana) substances in the mid-1990's and early 2000's. The CI agreed to cooperate with law enforcement in this matter in exchange for monetary payment. The CI's identity is known to Special Agent Jay Godino and to me. The CI has previously supplied information to law enforcement officers, including detailed information on suspects' criminal activity, including methods of operation, primary territory, criminal associates, locations of criminal activity, vehicles used, license plates, etc. The information received from the CI has then been corroborated by law enforcement officers. According to investigators, the CI has also made statements against his/her penal interest when describing his/her personal criminal involvement with area drug and/or firearms dealers. The CI has previously provided information and/or purchased contraband for law enforcement officers for investigations that have resulted in seizures of controlled substances and/or firearms. In the District of Massachusetts, the CI has participated reliably in approximately 14 controlled firearms and/or narcotics purchases and has reliably reported on his observations, which ATF has corroborated whenever possible.

3

25-MJ-7151-JCB

communications, the CI told MICHAUD that the CI was located in Massachusetts. MICHAUD stated that he was located in New Hampshire and that he could bring the firearm to Massachusetts.

12. On February 11, 2025, the CI and MICHAUD agreed to meet in Pepperell, Massachusetts to conduct the transaction.[3]

13. Once at the agreed-upon location, the CI entered the front passenger seat of MICHAUD's vehicle. While in MICHAUD's vehicle, MICHAUD provided the CI a Good Time Outdoors CXV Core 15 .223/5.56 caliber semiautomatic rifle (SN: GTOC117734) and a 30-round .223/5.56 caliber magazine, pictured below, in exchange for $900.



14. Following the transaction, MICHAUD and the CI departed the area in their respective vehicles. The agents then recovered the firearm and magazine purchased from the CI.

---

[3] During controlled purchases, including each controlled purchase described in this affidavit, ATF meets the CI at a pre-arranged location and searches the CI and the CI's vehicle for weapons, money, and contraband. ATF provides the CI with ATF funds to make the purchase and audio and/or video recording device(s) to monitor the transaction. Agents make reasonable efforts to maintain physical surveillance of the CI, to, from, and during the deal. At the end of the transaction, the CI and CI's vehicle are searched again for weapons, contraband, and money. Agents then recover the purchased contraband. The CI is interviewed about the deal and agents review the recording(s) of the deal to verify the deal and CI's account.

4

25-MJ-7151-JCB

### February 18, 2025, Controlled Purchase

15. During the week leading up to February 18, 2025, the CI and other undercover law enforcement officers communicated with MICHAUD through Snapchat direct messages, telephone text messages and phone calls to arrange for the purchase of three firearms.

16. On February 18, 2025, the CI and MICHAUD agreed to meet in Pepperell, Massachusetts to conduct the transaction.

17. That day, investigators observed MICHAUD leave his residence in Nashua, New Hampshire and travel directly to the agreed-upon location. At the agreed-upon location, MICHAUD exited his vehicle, reached into the rear seat of his vehicle, and then entered the front passenger seat of the CI's vehicle. While inside the CI's vehicle, MICHAUD provided the CI three firearms, approximately ten rounds of .454 Casull/.38 Special ammunition, approximately six pistol magazines, and various other firearms parts and accessories, all in exchange for $2,100. Specifically, MICHAUD sold to the CI:

    a. A Taurus Raging Hunter .454 Casull Revolver (SN: AEJ705164) and approximately five (5) rounds of .454 Casull ammunition;

    b. A Rossi Interarms M68 .38 Special Revolver (SN: AA214044) and approximately five (5) rounds of .38 Special ammunition; and

    c. A Walther PPS 9mm Pistol (SN: AR6936) with approximately six (6) Walther PPS 9mm magazines and various firearm parts and/or accessories.

18. Following the transaction, MICHAUD and the CI departed the area in their respective vehicles. The agents then recovered the firearms, ammunition, magazines, and various other firearms parts and accessories, from the CI, pictured in part below.

25-MJ-7151-JCB



February 27, 2025, Controlled Purchase

19.     During the week leading up to February 27, 2025, the CI and other undercover law enforcement officers communicated with MICHAUD through Snapchat direct messages, telephone text messages and phone calls to arrange for the purchase of two firearms.

20.     On February 27, 2025, the CI and MICHAUD agreed to meet in Pepperell, Massachusetts to conduct the transaction. That day, investigators observed MICHAUD exit his residence in Nashua, New Hampshire and travel directly to the agreed-upon location.

21.     At the agreed-upon location, MICHAUD exited his vehicle and entered the front passenger seat of the CI's vehicle. While inside the CI's vehicle, MICHAUD provided to the CI two firearms, a 30-round magazine, and a 10-round magazine, all in exchange for $1,750. Specifically, MICHAUD sold to the CI:

        a. A Radical Firearms RF-15 .223/5.56 caliber semiautomatic short-barreled rifle (SN: 23-028533) and a 30-round .223/5.56 caliber magazine; and

6

25-MJ-7151-JCB

    b. A Sig Sauer P227 Equinox .45 caliber pistol (SN: 51B005854) and a 10-round Sig Sauer P227 .45 caliber magazine.

22. During the transaction, MICHAUD talked to the CI about the Radical Firearms short-barreled rifle (SBR). MICHAUD explained to the CI that because the rifle has a stock affixed to it, the rifle qualifies as an SBR. MICHAUD then noted that the rifle has a 30-round magazine, and warned the CI that it would constitute "three felonies" for the CI to possess this rifle in Massachusetts.

23. Following the transaction, MICHAUD and the CI departed the area in their respective vehicles. The agents then recovered the firearms and magazines, pictured below.



March 20, 2025, Controlled Purchase

24. During the week leading up to March 20, 2025, the CI and other undercover law enforcement officers communicated with MICHAUD through Snapchat direct messages, telephone text messages and phone calls to arrange for the purchase of three firearms.

25. On March 20, 2025, the CI and MICHAUD agreed to meet in Pepperell, Massachusetts to conduct the transaction.

25-MJ-7151-JCB

26. That day, investigators observed MICHAUD exit his residence in Nashua, New Hampshire and travel directly to the agreed-upon location.

27. At the agreed-upon location, MICHAUD exited his vehicle and entered the front passenger seat of the CI's vehicle. While inside the CI's vehicle, MICHAUD provided to the CI three firearms, two magazines, and ammunition, all in exchange for $2,250. Specifically, as to the firearms, MICHAUD sold to the CI:

    a. A Century Arms 7.62x39mm VSKA AK Rifle (SN: SV7093060)

    b. A Smith & Wesson M&P 9mm Pistol: (SN: HDR4873)

28. A Taurus PT-22 .22 caliber Pistol (SN: Z001585). Following the transaction, MICHAUD was placed under arrest. The agents then recovered the firearms, magazines, and ammunition, pictured in part below.

 

29. Through my training and experience, I am aware that the companies that manufactured the firearms that MICHAUD sold to the CI from February 11, 2025, through March 20, 2025, including Core Rifle Systems, Taurus, Rossi, Walther Arms, Radical Firearms, Sig Sauer,

and Century Arms do not manufacture firearms in Massachusetts. I am further aware that there is no commercial ammunition manufactured in Massachusetts.

## CONCLUSION

10. Based on the information described above, I believe there is probable cause to believe that MICHAUD has trafficked firearms, in violation of 18 U.S.C. § 933(a)(1).

Sworn to under the pains and penalties of perjury.

_____
Task Force Officer Dane C. Jobst
U.S. Bureau of Alcohol, Tobacco, Firearms & Explosives

Sworn before me by telephone in accordance with Federal Rule of Criminal Procedure 4.1 this 20th day of March, 20 2025.

_____
HONORABLE JENNIFER C. BOAL
UNITED STATES MAGISTRATE JUDGE

9